IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PEGGY J. T.,[1]        )
                       )
   **Plaintiff,**      )
                       )   CIVIL ACTION
v.                     )
                       )   No. 22-2117-JWL
KILOLO KIJAKAZI,       )
Acting Commissioner of Social Security, )
                       )
   **Defendant.**      )
_____)

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.   Background**

Plaintiff protectively filed an application for DIB on December 11, 2019. (R. 15, 231). After exhausting administrative remedies before the Social Security

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the ALJ failed properly to assess her residual functional capacity (RFC) or fully and fairly to evaluate the record evidence.  She primarily argues the ALJ did not properly evaluate the medical opinions of her medical sources and failed to consider Listing 12.07, Somatic symptom and related disorders (which includes convergence disorder) "when assessing Plaintiff's residual functional capacity" because she "did not consider the listing in relation to Plaintiff's residual functional capacity in the manner required by the regulations."  (Pl. Brief 24).

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  Consequently, to overturn an agency's finding of fact the court "must find that the

evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or

equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses the claimant's RFC.  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, the claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court addresses the errors alleged in Plaintiff's Social Security Brief.

**II.     Discussion**

   **A.     Listing 12.07 Somatic Symptom and Related Disorders**

Plaintiff argues the ALJ failed to consider Listing 12.07, Somatic symptom and related disorders (which includes convergence disorder) "when assessing Plaintiff's residual functional capacity" because she "did not consider the listing in relation to Plaintiff's residual functional capacity in the manner required by the regulations."  (Pl. Brief 24).  The court is unsure what Plaintiff means by this argument.  If she is arguing

4

error because the ALJ did not discuss Listing 12.07 in her RFC assessment between her discussions at step three and step four of the sequential evaluation process, she does not cite any authority for such a proposition. In fact, the determination whether a claimant's impairments meet or medically equal the criteria of a Listing is made at step three of the process. 20 C.F.R. § 404.1520(a)(4)(iii). If, on the other hand, Plaintiff is arguing the ALJ did not apply the criteria of Listing 12.07 as contained in the regulations, she is incorrect. Plaintiff purports to quote the relevant part of Listing 12.07 on pages 20-21 of her Brief, but the Listing quoted is from several years ago and is not the criteria of Listing 12.07 in effect when the decision here was made on October 22, 2021. The Listing in effect when the decision here was made is quoted here:

> 12.07 Somatic symptom and related disorders (see 12.00B6), satisfied by A and B:
>
> A. Medical documentation of one or more of the following:
>
> 1. Symptoms of altered voluntary motor or sensory function that are not better explained by another medical or mental disorder;
>
> 2. One or more somatic symptoms that are distressing, with excessive thoughts, feelings, or behaviors related to the symptoms; or
>
> 3. Preoccupation with having or acquiring a serious illness without significant symptoms present.
>
> AND
>
> B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
>
> 1. Understand, remember, or apply information (see 12.00E1).
>
> 2. Interact with others (see 12.00E2).
>
> 3. Concentrate, persist, or maintain pace (see 12.00E3).

>  4. Adapt or manage oneself (see 12.00E4).

20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.07 (Effective: April 2, 2021)

The ALJ found Plaintiff has a conversion disorder which meets the criteria of paragraph A of the Listing and there is no argument she found otherwise. It is the paragraph B criteria of the Listing which appear to be at issue. In a thorough evaluation of the four broad areas of mental functioning reflected in paragraph B of Listing 12.07, the ALJ found Plaintiff has a mild limitation in the ability to understand, remember, and apply information and moderate limitations in each of the other three areas. (R. 19-20). The record evidence supports the ALJ's evaluation of these areas and Plaintiff has not demonstrated otherwise. The court notes that Dr. Velazquez reported her medical opinion on a form apparently designed with the former Listing 12.07 in mind and she reported the Plaintiff had marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; and repeated episodes of decompensation, each of extended duration. (R. 474, 475). To the extent Plaintiff may be arguing error because the ALJ did not use the terms used by Dr. Velazquez, the court notes the ALJ, in summarizing Dr. Velazquez's opinion, specifically noted her opinion in each of these four areas. (R. 29).

## **B.** **Evaluation of Medical Opinions**

### *1.   Standard for Evaluating Medical Opinions*

Effective March 27, 2017, the regulations for evaluating medical evidence changed. 20 C.F.R. § 404.1502 (2017). In the new regulations, the Commissioner found

6

that certain evidence including decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner "is inherently neither valuable nor persuasive to the issue of whether you are disabled or blind under the Act, [and the SSA] will not provide any analysis about how we considered such evidence in our determination or decision." 20 C.F.R. § 404.1520b(c) (2017).

In the new regulations, the Commissioner explicitly delineated five categories of evidence including objective medical evidence, medical opinion, other medical evidence, evidence from nonmedical sources, and prior administrative medical findings. 20 C.F.R. § 404.1513 (2017). The regulations define objective medical evidence as "medical signs, laboratory findings, or both." 20 C.F.R. § 404.1513(a)(1) (2017). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 404.1513(a)(3) (2017). "Evidence from nonmedical sources is any information or statement(s) from a nonmedical source (including you) about any issue in your claim." 20 C.F.R. § 404.1513(a)(4) (2017).

The regulation defines "medical opinion."

> (2) Medical opinion. A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: …
>
>> (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling,

7

> or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
> (iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2) (2017).

The regulations include a new section entitled "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017." 20 C.F.R. § 404.1520c (2017). That regulation provides that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a) (2017). The regulation provides that the SSA will consider each medical source's opinions using five factors; supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(a)(c)(1-5) (2017). It provides that the most important factors in evaluating persuasiveness are supportability and consistency. Id.

The regulation explains that the decision will articulate <u>how persuasive</u> the SSA finds all medical opinions and prior administrative medical findings. 20 C.F.R. § 404.1520c(b) (2017). The articulation requirement applies for each source, but not for

each opinion of that source separately. 20 C.F.R. § 404.1520c(b)(1) (2017). It requires that the SSA "will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record." 20 C.F.R. § 404.1520c(b)(2) (2017). The regulation explains that when the decision-maker finds two or more medical opinions or prior administrative medical findings are equal in supportability and consistency "but are not exactly the same," the decision will articulate the other most persuasive factors from paragraphs (c)(3) through (c)(5). 20 C.F.R. § 404.1520c(b)(3) (2017). Finally, the regulation explains that the SSA is not required to articulate how it considered evidence from non-medical sources. 20 C.F.R. § 404.1520c(d) (2017).

### 2. Dr. Velazquez

Plaintiff's Brief appears to argue the ALJ failed to explain how she considered the supportability and consistency of Dr. Velazquez's opinions "against the actual medical records of the claimant's care and treatment." (Pl. Br. 23). She argues, "The ALJ's reasons for rejecting Dr. Velazquez['s opinions] are not legitimate and were based in part on speculation." Id.

The ALJ devoted an extensive paragraph in her decision summarizing Dr. Velazquez's opinions with significant citation to the record evidence. (R. 29). She then explained her evaluation of the persuasiveness of the opinions:

9

> Although Dr. Velazquez has a treating relationship with the claimant, the degree of limitations she has assessed the claimant are not supported by the objective medical evidence or consistent with the record as a whole. In fact, Dr. Velazquez's opinions are inconsistent with her own treatment notes of the claimant, which consistently note the claimant is alert and oriented with no cognitive loss (Exhibits 5F, 7F, 8F, and 14F). Furthermore, Dr. Velazquez's opinions appear to be based solely on the claimant's subjective complaints as the claimant's reported episodes eventually only occurred at night and there is no record of them being observed by Dr. Velazquez. Moreover, when observed, these episodes did not appear to be fit any neurological patters. [sic] Additionally, the degree of limitations assessed by Dr. Velazquez are not supported by her own observations of the claimant as she did not consistently perform physical examinations and simply noted the claimant's gait was intact or normal (Exhibits 5F, 7F, 8F, and 14F). Accordingly, the undersigned finds Dr. Velazquez's opinions are not persuasive.

(R. 30). As Plaintiff's argument suggests, the ALJ made the conclusory finding that Dr. Velazquez's opined limitations "are not supported by the objective medical evidence or consistent with the record as a whole." Id. However, that was not the end of the matter, for she continued and provided specific examples of inconsistency—"inconsistent with her own treatment notes of the claimant, which consistently note the claimant is alert and oriented with no cognitive loss"—and lack of support—no record of Dr. Velazquez having seen one of Plaintiff's reported episodes, episodes do not fit a neurological pattern, and Dr. Velazquez did not consistently perform a physical examination. These are legitimate reasons for finding the opinions unpersuasive and are supported by the record evidence cited.

To the extent Plaintiff objects to the ALJ's discounting Dr. Velazquez's opinions because they appear to be based solely on Plaintiff's subjective complaints, the court finds no error. As Plaintiff suggests in her Reply Brief, when an ALJ discounts a treating

10

source opinion because it is based on a claimant's subjective complaints but does not provide a legal or evidentiary basis grounded in the record evidence for that finding, the court will find that rationale is merely impermissible speculation. Langley v. Barnhart, 373 F.3d 1116, 1121 (10th Cir. 2004); Victory v. Barnhart, 121 F. App'x. 819, 823-24 (10th Cir. 2005). Here, however, the ALJ provided an evidentiary basis for her finding—Dr. Velazquez had never seen one of Plaintiff's episodes and consequently the extreme limitations she attributed to them must be based on Plaintiff's subjective complaints. This is not error.

### 3. *Opinions of Ms. Schrick and Ms. Schwartz*

Plaintiff argues the ALJ erred because she found the opinions of her physician's assistant, Ms. Schrick, and her social worker, Ms. Schwartz, unpersuasive, in part, because they are opinions on issues reserved to the Commissioner. (Pl. Br. 24-25) (quoting POMS DI 24503.040 "Do not consider an entire document to be a statement on an issue reserved to the Commissioner simply because the document contains a statement on an issue that is reserved to the Commissioner."). Plaintiff argues, "Since the ALJ in this case does not identify which 'statement' she is referring to and simply rejects all of Ms. Schrick's opinion and that of Ms. Schwartz, her evaluation is erroneous and requires reversal." (Pl. Br. 25). The court disagrees.

Plaintiff is correct that the ALJ need not, and should not, have addressed Ms. Schrick's or Ms. Schwartz's statements on issues reserved to the Commissioner such as the statements that Plaintiff cannot work. It would have been better if she had not done so. If the presence of statements on issues reserved to the Commissioner were the only

11

reason the ALJ gave for finding the opinions not persuasive remand potentially would be required. However, the ALJ found "Ms. Schrick's opinion is [(1)] conclusory, [(2)] appears to be temporary in nature given it is subject to supplemental testing, and it [(3)] gives no supporting explanation or rationale for this extreme limitation. Furthermore, Ms. Schrick's opinion [(4)] concerns an issue reserved to the Commissioner." (R. 27). Similarly, she found Ms. Schwartz's opinion unpersuasive because, "[(1)] The record is devoid of supporting treatment notes from Ms. Schwartz. Furthermore, Ms. Schwartz's opinion [(2)] appears to be based on the claimant's subjective complaints, [(3)] is conclusory, [(4)] does not provide significant rationale, and it [(5)] concerns an issue reserved to the Commissioner." Id.

Clearly the opinions expressed by Ms. Schrick and by Ms. Schwartz contain statements on issues reserved to the Commissioner which Plaintiff admits are neither valuable nor persuasive. However, as enumerated in the quotes above the ALJ provided three or four reasons apart from that fact to find the opinions unpersuasive. Those reasons are supported by the record evidence and Plaintiff does not even attempt to argue otherwise. The ALJ's error in stating the medical sources provided opinions on issues reserved to the Commissioner and to further discuss the medical sources' statements is harmless and remand for the Commissioner to correct the technical error in terminology would serve no useful purpose.

The court feels it necessary to address one other issue raised by Plaintiff. She argues that because the ALJ found the prior administrative medical findings of the psychological consultants not persuasive he dismissed the only opinions of medical

12

professionals which support his RFC assessment and thus "no medical evidence supports the ALJ's decision." (Pl. Br. 25-26). This argument misunderstands both the decision at issue here and the law respecting medical opinions or prior administrative medical findings.

First, the decision at issue is replete with medical evidence and other evidence relied upon by the ALJ to support her findings. The real import of Plaintiff's argument appears to be that the decision does not have medical opinion evidence supporting each RFC limitation or ability assessed by the ALJ. That is not required. "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012) (citing Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004)); Wall, 561 F.3d at 1068-69). The narrative discussion required by SSR 96-8p to be provided in an RFC assessment does not require citation to a medical opinion, or even to medical evidence in the administrative record for each RFC limitation assessed. Castillo v. Astrue, Civ. A. No. 10-1052-JWL, 2011 WL 13627, *11 (D. Kan. Jan. 4, 2011). "What is required is that the discussion describe how the evidence supports the RFC conclusions and cite specific medical facts and nonmedical evidence supporting the RFC assessment." Id. See also, Thongleuth v. Astrue, Civ. A. No. 10-1101-JWL, 2011 WL 1303374, *13 (D. Kan. Apr. 4, 2011). There is no need in this case, or in any other, for the Commissioner to base the limitations in his RFC assessment upon specific statements in medical evidence or opinions in the record.

Plaintiff has shown no material error in the ALJ's decision below.

13

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated March 27, 2023, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**